Good morning, everyone. Welcome Our first case this morning is Lockett v. Bonson, Ms. Dillon Good morning, and may it please the court. My name is Rosalind Dillon, and I represent Plaintiff Appellant Jeremy Lockett. Mr. Lockett unnecessarily suffered excruciating pain and was then denied his day in court to vindicate his right to adequate medical care, even though he did everything that was required under the law. First, regarding the exhaustion issue as to Nurse Beth Edge, exhaustion in this case is defined by Wisconsin's grievance process, which contemplates an appeal as the final step prisoners must take in order to exhaust administrative remedies. Mr. Lockett has submitted into evidence an unrebutted affidavit, swearing that he filed his grievance appeal in the time and at the place required. There was an affidavit, but on summary judgment, Mr. Lockett's affidavit is enough to create an issue of fact. This court has held that a prisoner's self-serving affidavit is sufficient on summary judgment to create an issue of fact. At summary judgment, Mr. Lockett's account must be credited, and he therefore did all that was required. He was supposed to get a receipt, right? The Wisconsin rules, while they contemplate what a prisoner should do when they do receive a receipt, there is nothing within the procedural rules that explain what a prisoner should do when they do not receive a receipt. He can sit on his hands. That's your view, right? He can sit on his hands and do nothing if he doesn't receive a receipt. Our view is that Mr. Lockett, per this court, had waited a sufficient amount of time to hear back when he appropriately filed his grievance appeal. Did he file any inquiry as to why he had not received a receipt? He did not in this case. But to his court... He had... There was a procedure by which he could have. Is there not? There is no procedure enumerated in the procedural... He has just used a procedure, a grievance procedure, haven't he? That's what the case is all about. He used the procedure appropriately to file his grievance appeal. However, the procedures are silent as to what a prisoner should do to follow up. It doesn't say how long a prisoner should wait until they follow up on their grievance appeal when they do not receive a receipt. And it does not say where a prisoner is supposed to follow up, how many times a prisoner is supposed to follow up, and to infer a follow-up requirement... So what's lacking in the procedure that you think of? Where did Wisconsin drop the ball? Wisconsin is the master of its own grievance procedures. If they wish for prisoners to follow up when they do not receive a receipt, they may do so by writing it into their procedural rules. They have to explicitly do that as a matter of federal constitutional law. That's your position. Right. Under this court's law and the Supreme Court's law, all a prisoner is required to do to exhaust the administrative remedy process is file grievances and appeals in the time and at the place specified by the to infer a follow-up requirement, as the district court did and as defendant urges, would be to engage in inappropriate judicial policymaking. Well, we don't want to do that. Sure. But at the same time, we want to make sure that your guy doesn't game the system. And you're letting that happen, aren't you? Because he can sit there on his own and file a requirement that prisoners follow up. However, this is what PAVI hearings were designed to deal with when there's a material issue of fact as to whether the final step in the grievance appeal happened. Mr. Lockett requested... We have the affidavit from the custodian saying she searched the file. It's not there. Numerous courts have held that simply no record of receipt is not enough on summary judgment to defeat a prisoner's claim that he has completed the final step in the manner expressed by the policy. So, the question and the difference maybe between my questioning and you then is whether he did complete the final step or whether he had an obligation when he didn't hear forever and ever to make an inquiry as to why he hadn't received a receipt for the first appeal he has supposedly filed, right? Yes. But again... That's the nub of the case, right? Yes. But again, all the procedures require are for Mr. Lockett to appeal in the appropriate time and place. He has done that here and to infer a follow-up requirement would be allowing prisons to constructively deny any appeal by simply not issuing receipts. But if we don't, on the other hand, we're allowing prisoners to gain assistance? But this is what PAVI hearings were designed to accomplish. What would a PAVI hearing have done here? A PAVI hearing would have been the district court weighing Mr. Lockett's statement versus the prison's statement and determining whether or not he was committing fraud by saying... What would the prison have said in a PAVI hearing? They would say that they did not issue a receipt and so that means Mr. Lockett did not file his grievance appeal. However, under a regime advocated for by defendant where an issuance of receipt is necessary, rights would be dependent on the defendant. Again, the solution here is clear. Wisconsin may add a follow-up requirement. However, they have not done so in this case. And in the meantime, Mr. Lockett did everything that was required under the law. The policies explain to the prisoners that exhaustion hinges on this receipt. That's not how we read the policy. The policy states what a prisoner may do to exhaust when they do receive a receipt. Right, but in explaining the exhaustion requirements, it explains the receipt process, putting the prisoners on notice that if they do not receive the receipt, their grievance is not considered exhausted. If a claim of non-receipt were enough to foreclose exhaustion, then prison officials would have complete control over whether a prisoner could ever bring a claim in federal court. Well, not exactly. Prisoners are the masters of their own exhaustion requirements. They have affirmative obligations to comply with the state's requirements. And if the receipt is part of the process explicitly and the inmates are informed in the manual that exhaustion hinges on receipt when they don't receive one, they are under an obligation to do something about that. To infer an atextual obligation that is not present anywhere in this requirement places the onus on the prison for exhaustion, not on the prisoner. There's nothing that explains how many days Mr. Lockett should wait to follow-up, what process he should use to follow-up. And Wisconsin can change this. Well, there's no question that there was no follow-up here. There's no question there was no follow-up, but there's no question... So we're not talking about missing a time limit. There was no follow-up. But there's nothing in the procedures that tell him that he must follow-up, and that is... But there is something in the policies that informs the prisoner that if you don't get a receipt, you haven't exhausted. There is. It does not say if you do not get a receipt, you have not exhausted. It says once you get a receipt, exhaustion occurs 45 days from that moment. It doesn't say what a prisoner should do when they do not receive a receipt. Isn't that a necessary inference? To infer that requirement, as I said, is an exercise in judicial policymaking that Wisconsin can change. Wisconsin can change the procedural rules. Once Mr. Lockett placed his appeal properly in the box, he no longer had control over what the prison would do with his appeal. Moving on to the deliberate indifference claim against Nurse Practitioner Bonson, there is general knowledge among the medical community that an acute sickle cell crisis is a severe manifestation of sickle cell disease. It results in excruciating pain and requires medical treatment. There is also general knowledge in the medical community that sickle cell pain is treated based on severity, and severity is determined based on physical examination. Mr. Lockett went into sickle cell crisis on October 3rd. He was released from the hospital by his treating physician with an order for pain medication to treat his residual breakthrough pain. And when I say breakthrough pain, I mean excruciating pain. Nurse Practitioner Bonson knew that Mr. Lockett had been discharged with this prescription and that he had been sent to the emergency room. Yeah, but she had also had a lot of experience with him before this, several occasions where she encountered him, pretty much knew what his condition was as time went on. She had treated him for chronic sickle cell crisis pain, that is true. However, there is an important distinction between his chronic pain that he felt on a daily basis and the acute sickle cell crisis pain he would likely feel after his release from the hospital. That is why people who have been released following an acute sickle cell crisis episode are given an increased dose of pain medication to handle any breakthrough pain they may be feeling after they're released. Despite this knowledge, Nurse Practitioner Bonson disregarded Dr. May's prescription without even examining him. A reasonable juror could find that this action constituted deliberate indifference to Mr. Lockett's serious pain. Why not just negligence at best? She disagrees with the narcotic pain prescription because his pain had been controlled well with Tylenol-3, also a narcotic, just not oxycodone, and there's an addiction problem with the use of oxycodone, especially in the prison. There is a material issue of fact on this record as to whether Tylenol-3 was even effective in treating his more chronic pain. Acute sickle cell crisis is... It's really not. It's undisputed that he had only complained once that he wasn't getting relief from it. He complained on September 7th that Tylenol-3 was not effective, and then soon after that he went into sickle cell crisis. There is a difference between an emergent sickle cell crisis episode and the more chronic pain that he was feeling. Right, but at best it's a case of medical negligence. At most, and we don't even have an expert on standard of care here, not a case of deliberate indifference. This is a constitutional claim, not a medical malpractice claim. May I answer briefly? Please. This court has held that a prisoner may state a claim for deliberate indifference where they're sufficiently alleges that his treatment was not based on legitimate medical judgment. A physical examination is absolutely necessary to make a legitimate judgment determining how to treat pain. Nurse practitioner Bonson did not complete that one step. That would be setting a very new and potentially exploitable standard, legal standard. We said that a physical examination is necessary to treat any kind of pain. That's not the standard we're advocating for, and the standard we're advocating for is constrained by four factors. First, the general knowledge in the medical community that an acute sickle cell crisis episode causes excruciating pain that needs appropriate treatment. Second, that there was a doctor's order for that pain medication following the standard protocol used to treat the disease. Third, the provider here knew. And fourth, she disregarded that order without the step necessary to make sure that decision was appropriate. Thank you. Thank you. Ms. Kudler. I'm sorry, who's going first? I'll go first. Okay. Mr. Morris. I've got it the other way around on my card. May it please the Court, good morning. The receipt system is both crucial to the state of Wisconsin's grievance process and, more importantly, it is a safeguard to all inmates who wish to pursue any claims that they have. The receipt system provides notice to the inmates at all levels of the grievance process. When they file their initial grievance, the inmate complaint examiner is required to issue a receipt. Within 30 days of receiving that receipt, if the inmate doesn't hear anything back, then the inmate knows by virtue of the grievance process that he can then appeal to the next level of the grievance process. At that point, the corrections complaint examiner must issue another receipt. When the inmate receives that receipt, he knows that if he doesn't hear anything back within 45 days, then he's done, he's exhausted, and he can proceed with his 1983 claim. If this Court adopts the appellant's point of view, despite the clear references to the receipt system throughout the grievance process, it will gut the inmate complaint review system, and it will also undercut this Court's rationale in the Dole v. Chandler case, which really stands for the proposition that an inmate is the master of his own destiny and must take all actions that are reasonable under the circumstances. In that case, the inmate didn't have the benefit of a receipt system. Even in that case, he still did what we all would do if we didn't hear back when we put something in the mail. He followed up. I think that's a crucial fact in that case. This Court held that by following up, he did all that was reasonable under the circumstances and had exhausted. Here, we have a receipt system and an inmate who is no stranger to the inmate grievance process. In fact, if you look at one of the exhibits to the affidavit that we filed, he had fully exhausted four other grievances in 2016, including fully exhausting his grievance against the co-defendant in this case. And he would have received that receipt just a few days after he filed his initial grievance against Nurse Edge. In short, Your Honors, the receipt system must mean something. It was put in place as a safeguard for everyone in the Wisconsin prison system. One should not be able to just bury his or her head in the sand, knowing full well that there is a receipt system in place. And with that, Your Honors, unless there are any questions, I'll see you the rest of the day. Let me ask just one. My curiosity is here, he has this crisis, whatever, he goes to the hospital and Dr. Mai, whatever, are you just focused on Edge? Yes, Your Honor. Okay, I won't bother you with that then. Okay. Thank you, Your Honors. Thank you. And now, Ms. Kugler. Good morning. May it please the Court. Despite how Mr. Lockett has presented this case here today against my client, Tanya Bonson, the case comes down to a question of drug choice. On October 4th, he received Tylenol with codeine and he argues he should have received oxycodone. He's not claiming he should have received something stronger than oxycodone. That's important for three reasons. First, there's simply no dispute that both medications are considered to be appropriate drugs for moderate sickle cell pain. Second, there's no dispute that the key difference between the two drugs is that oxycodone has a higher abuse potential. Third, there's no dispute here that my client, Ms. Bonson, had a general concern for substance abuse and drug seeking, and she considered those potentials when she made treatment decisions for Mr. Lockett, who had a history of substance abuse. Now, choice of drug, a disagreement about pain medication, generally is not sufficient to establish deliberate indifference. That's established in the case law. Mr. Lockett makes two arguments why it should be here, but neither is availing. His first argument has to do with the fact that Ms. Bonson knew the Tylenol with codeine wasn't working for him before she made this decision. There's no material factual dispute on that issue. Even if we take as true that Mr. Lockett told Ms. Bonson on September 7th the Tylenol with codeine wasn't working, we have to look at, just like the district court did, what else Ms. Bonson knew on October 4th when she was making the decision between the two drugs. She knew Mr. Lockett had continued to take the Tylenol with codeine. He made no further verbal complaints, and he made no written complaints. There was that one complaint, that's true, but as far as Ms. Bonson was aware on October 4th, the medication had started to work for his pain. Now the second argument that's been presented before this court is that Ms. Bonson simply couldn't have exercised her professional judgment that deliberate indifference requires when she decided between the two appropriate pain medications without conducting a physical exam. Now I think what this court's questions to Mr. Lockett's team were getting at is that he's really asking the court to draw a bright line rule. And the question I think the court needs to answer is whether it's going to take that invitation and say that there's always going to be a jury question in a situation where a provider doesn't conduct an exam in making a pain medication decision. Our position is that the court shouldn't set a bright line rule, and the facts of each case are important. To use deliberate indifference speak, it has to be part of the exercise of professional judgment. A provider has to be allowed to decide whether an exam is necessary or appropriate based on everything else he or she knows. You know, when we look at this case, Ms. Bonson probably could have asked to see Mr. Lockett if she thought it was necessary to her decision, again, between those two appropriate drugs. But none of the information she had told her that it was necessary. Let's look at what she knew on October 4th. She was familiar with his general medical history. They had an existing relationship. She had seen him before. She had seen him for sickle cell pain before. She knew she had switched him to that Tylenol with codeine on September 2nd, and it appeared to be working for him. She knew that he'd gotten a substantial dose of oxycodone at the hospital that morning. She also knew, though, that the hospital sent him back to the prison for further pain management. They didn't admit him. Again, she knew that oxycodone and Tylenol with codeine are both considered to be appropriate drugs for moderate sickle cell pain. Again, though, that key difference is the addictive potential, and that's important. It's important because Ms. Bonson had a concern about substance abuse and drug seeking here. Ms. Bonson's decision was based on all this information. And as part of that decision-making, she didn't find it necessary to conduct an exam. Ms. Bonson made— I just wanted to—this is what I was looking at before. Is that the duration? I don't know how long these crises, if that's what you call them, last. But he's still there. He's getting some kind of medication all the time now, I suppose. I'm just guessing, but is that level change? Is it different medication, or is he still on Tylenol-3? Is oxycodone, whatever it's called, is more, I guess you'd say, addictive? And it was a one-time dose from Dr. Mai. Is it me or something like that? Correct. So that was his only encounter with him, right? I believe that's correct. I don't believe that it was Dr. Mai who saw him on any other visits that he had to the outside hospital. And she seems to see him on, I don't want to say a weekly basis, but it seems that she's—maybe you can inform me. Looking at the index, it seemed that she saw him a number of times. I think that's true, Your Honor. She was essentially the main provider at the prison at that time, and she had an established relationship with him. She had seen him before. She continued to see him after. She's a nurse practitioner, is that correct? That is correct. So she has a level of expertise that I think you would take into consideration as far as having familiarity with him. I think that's true, Your Honor. And it's also, you know, the way the prison medical system is set up, when a prisoner leaves the facility, anything that an outside provider decides is really a recommendation. It's up to the provider in the prison to decide what to do when that patient gets back. You're talking about leaving the prison to go to other medical treatment? Yes, such as this instance to the outside emergency room. So it was Ms. Bonson's decision, you know, how to put into play what the outside provider had recommended. And, again, you know, her choice was between two appropriate drugs. When we think about it from that perspective, a disagreement about pain medication choice is simply not deliberate indifference. She made a reasoned decision to choose one of two appropriate drugs, and, you know, the fact here is that oxycodone had that higher abuse potential and it was relevant here based on Mr. Lockett's history and the general concern about substance abuse and drug seeking in the prison system. No reasonable jury could determine that her decision was blatantly inappropriate. I think that's my time. Thank you. Thank you. Ms. Dillon, I think your time had expired, but you can have one minute for rebuttal. Thank you. First, the other side is blurring the distinction between chronic sickle cell crisis or sickle cell pain and acute sickle cell crisis pain. A doctor examined Mr. Lockett during his hospitalization for acute sickle cell crisis and made a determination based on an examination that oxycodone was appropriate for him to be released from the hospital. This is not a simple disagreement over different types of pain medication. Tylenol-3 was not working for his more chronic pain. It would certainly not be appropriate to treat his sickle cell crisis pain. Second, if it is so important for Wisconsin that prisoners follow up when they do not receive a receipt, all they have to do is write that into their requirement. Thank you. All right. Thank you. Ms. Dillon, you were appointed to represent Mr. Lockett on this appeal, as I understand it. Is that right? No, Your Honor. It's a pro bono case. She's a student of mine at Northwestern. Got it. So this is through the clinic. This is through the clinic. And you are, in fact, graduating today. All right. You both have the thanks of the court for your representation of your client, and congratulations. Congratulations.